# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| MILLARD COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:25-cv-01264 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| MEHARRY MEDICAL COLLEGE, | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is a Defendant Meharry Medical College's motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). (Doc. No. 11). Plaintiff Millard Collins filed a response (Doc. No. 21), and Defendant filed a reply (Doc. No. 22).

For the reasons stated herein, the motion to dismiss is **DENIED**.

## I.  BACKGROUND[1]

Plaintiff Dr. Millard Collins graduated from Meharry Medical College ("Meharry") in 2001, and joined the Meharry faculty as Assistant Professor, Clerkship Director, and Associate Program Director in July 2004. (¶¶ 6, 7). He worked for Meharry in various capacities until his employment was terminated on September 30, 2024. (¶¶ 3, 46). From 2004 until 2023, Plaintiff was promoted several times and received exemplary evaluations and commendations. (¶¶ 7-22). In 2016, he became Chair of the Department of Family Medicine. (¶ 17). In summary, his career at Meharry was going well. All of this changed after Sonja Harris-Haywood became Dean of the School of Medicine in August 2023. (¶ 23). Plaintiff claims that, following Harris-Haywood's arrival, the Department of Family Medicine was "systematically undermined and deprived of

---

[1]  The facts in this section are as alleged in the Complaint (Doc. No. 1).

autonomy" and "unfairly targeted." (¶¶ 26-28). The Dean rarely met with Plaintiff or other male department heads, would not appear for scheduled meetings, and, on one occasion, rescheduled a meeting without providing notice, and then publicly reprimanded Plaintiff for missing the rescheduled meeting. (¶¶ 29, 30). Harris-Haywood also altered Meharry's grant submission process, which harmed Plaintiff's relationships with funding agencies. (¶ 31).

Plaintiff raised concerns about the Harris-Haywood's leadership with Meharry's President and a member of the Board of Trustees. (¶¶ 33, 34). When Harris-Haywood learned of these discussions, she warned Plaintiff that going "over her head" again would be considered "insubordination." (¶ 35). In April 2025, Plaintiff formally complained to Meharry's General Counsel and to Human Resources that the Harris-Haywood was creating a hostile work environment and had discriminated against him based on gender by intentionally sabotaging his department and reputation. (¶¶ 36, 37). Plaintiff told them that he feared retaliation. (*Id*.).

The alleged mistreatment and discrimination persisted after the report. Harris-Haywood ignored him at a meeting and instead called on female faculty members to speak, provided female faculty members greater support and access to leadership, promoted less-qualified female faculty, and marginalized and excluded male faculty. (¶ 39-43). Harris-Haywood terminated the employment of a doctor who requested to transfer to Plaintiff's department. A senior staff member referred to Harris-Haywood as a "maneater." (¶ 40).

At some time in 2024, Plaintiff was interviewed as part of an external investigation about the handling of grants in his department and other matters. (¶ 45). On September 30, 2024, he was terminated "for cause." (¶ 46). The stated reason for termination was "grant oversight failures and untruthfulness during the investigation" and dual employment. (*Id*.). Plaintiff claims that Meharry failed to follow internal policies regarding his termination and associated grievance and that others

with equal involvement with grant management and/or outside employment were not disciplined or terminated. (¶¶ 47, 49, 50-58).

On March 10, 2025, Plaintiff began part-time employment as a clinical physician at Nashville General Hospital ("NGH"), located on Meharry's campus. (¶ 59). On April 2, 2025, following Meharry's reacquiring control of NGH's clinical enterprise, he was terminated from NGH. (¶ 60). Plaintiff was told that Meharry's leadership's influence led to his termination from NGH. (¶ 61).

Plaintiff brings claims against Meharry for unlawful discrimination under Title VII of the Civil Rights Act. (Doc. No. 1). He claims Defendant discriminated against him in two ways: (1) by creating a hostile work environment; and (2) by discriminating against him based on gender. Plaintiff also claims Defendant retaliated against him by terminating his employment with Meharry in September 2024, and causing him to be terminated from NGH in April 2025. (*Id*. ¶¶ 63-68).

Defendant Meharry seeks dismissal of both claims under Federal Rule of Civil Procedure 12(b)(6).[2] (Doc. No. 11).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted

---

[2] Defendant also argues in a footnote that the Complaint should be dismissed under Federal Rule of Civil Procedure 4(m) for failure to effect timely service of process. (Doc. No. 11 at n.1). Although this issue has been resolved since the filing of the motion (*see* Doc. No. 32), substantive arguments, especially substantive grounds for dismissal, must be raised in the body of the motion.

as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008). Defendant has filed a copy of the EEOC Charge (Doc. No. 11-1), which is appropriate for consideration because it is a public record.

### III.    ANALYSIS

**A.    Discrimination**

Title VII prohibits discrimination in employment on the basis of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. To state a Title VII discrimination claim, a plaintiff must plead facts that allow the court to infer an adverse employment action was based on discriminatory animus. Defendant first argues Plaintiff's disparate treatment and hostile work environment claims should be dismissed because the facts alleged in the Complaint do not plausibly infer any sex-based animus.

4

The Court disagrees. Construed in the light most favorable to the Plaintiff, the allegations in the Complaint plausibly alleges sex-based animus. Plaintiff alleges the Dean treated men and women differently, allowing women to speak at meetings, but not Plaintiff, rarely meeting with Plaintiff or other male department heads, providing female faculty members greater support and access to leadership, promoting less-qualified female faculty over more qualified male colleagues, and marginalizing and excluding male faculty. Defendant argues that "the reasonable inference from what Plaintiff alleges in the Complaint is that Dr. Harris-Haywood, who was the new dean, had different expectations, priorities, and work/management styles that Plaintiff disagreed with," not sex-based discrimination. (Doc. No. 12 at 7). To be sure, the inference Defendant suggests is possible, but it is an inference drawn in favor of Defendant, which is not permitted on a motion to dismiss. *Directv, Inc.*, 487 F.3d at 476. Drawing reasonable inferences in favor of the *Plaintiff*, the allegations in the Complaint plausibly allege discriminatory animus.

**B.      Hostile Work Environment**

Defendant next argues the Complaint lacks facts upon which the Court could plausibly infer that Defendant's conduct created a hostile work environment. A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bruce v. Adams and Reese, LL*P, 168 F.4th 367, 377 (6th Cir. 2026) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993)); *Hamm v. Pullman SST, Inc.*, 167 F.4th 382, 389 (6th Cir. 2026) ("Title VII does not enact a 'general civility code for the American workplace.'") (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998)). "[T]he conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Bruce*, 168 F.4th at 377

(citing *Randolph v. Ohio Dep't of Youth Services*, 453 F.3d 724, 733 (6th Cir. 2006)). Whether the conduct is sufficiently severe or pervasive to rise to the level of a hostile working environment depends on the totality of the circumstances, such as "the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 21, 23.

Defendant argues the allegations in the Complaint are insufficient to raise a plausible inference that the alleged conduct was so severe or pervasive as to create a work environment that a reasonable person would consider hostile or abusive. (Doc. No. 12 at 11). Plaintiff does not meaningfully respond to Defendant's argument. (Doc. No. 21). In fact, the response brief does not even include the words "severe" or "pervasive." Although the response discusses evidence of "gender-based hostility," hostility does not equate to a hostile work environment unless it rises to a threshold level.

Whether the allegations of a hostile work environment are sufficient to survive a motion to dismiss is a very close call. None of the conduct alleged is particularly severe – missed or infrequent meetings with male employees, an unjustified reprimand, promotion of unqualified female candidates, and undermining and micromanaging Plaintiff's department. There are no allegations of name-calling, insulting language, physical threats, or humiliation. But a hostile work environment can arise from a pattern of less severe conduct. Here, the Complaint is not very specific about the frequency of the alleged conduct, but, construing the allegations in the light most

6

favorable to Plaintiff, the facts are sufficient to state a claim for discrimination based on hostile work environment.[3]

**C.      Retaliation**

Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee because he has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." § 2000e-3(a).

Defendant argues Plaintiff fails to state a retaliation claim because: (1) he has not alleged any facts that would support a causal connection between protected activity in April 2024 and his termination five months later; (2) he does not allege the Harris-Heywood knew of the protected conduct; and (3) Plaintiff does not deny the truth of Defendant's reasons for termination.

The Court finds Plaintiff has plausibly alleged a retaliation claim. Standing alone, temporal proximity of five months may not be sufficient to show causation at the summary judgment stage. At this stage, however, the Court finds it plausible that Plaintiff's complaints led to his termination. Defendant is correct that the Complaint does not specifically allege that the Dean knew of Plaintiff's complaints to the General Counsel and Human Resources, but it is reasonable to infer that she did. In asking the Court to dismiss the Complaint on this basis, Defendants are asking the Court to draw inferences against the Plaintiff, which, as previously stated, is not the standard on a motion to dismiss. Finally, the fact that Plaintiff does not deny Defendant's reasons for termination has no bearing on his ability to state a claim, particularly given allegations that others engaged in similar conduct and were not terminated.

---

[3]      White the Title VII claims based on hostile work environment survives for now, Plaintiff is encouraged to evaluate the evidence as discovery proceeds to determine whether this theory of Title VII liability has a factual basis.

**D.      Exhaustion of Administrative Remedies**

Defendant argues Plaintiff's claim that Defendant retaliated against him by causing him to be terminated from his position at NGH must be dismissed because Plaintiff did not timely file an EEOC charge with respect to this claim. (Doc. No. 12 at 17-18).

An employee alleging employment discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts. *See* 42 U.S.C. § 2000e–5(e)(1). As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1)). However, a plaintiff is not precluded from bring a claim if "facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). The Sixth Circuit has observed that "retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999). Even when the EEOC charge does not properly allege a retaliation claim, the Court has jurisdiction over retaliation arising as a result of filing the EEOC charge itself. *Id*. at 831.

Here, Plaintiff's EEOC charge asserts a retaliation claim. Investigation into additional instances of retaliation would naturally grow from the underlying retaliation claim. Accordingly, this aspect of Plaintiff's retaliation claim will not be dismissed for failure to exhaust administrative remedies.

## IV.  CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (Doc. No. 11) is **DENIED**.

It is so **ORDERED**.

_____

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

9